

FILED

MAY - 3 2007

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR 06-40125 |
| Plaintiff, | * | |
| | * | MEMORANDUM OPINION |
| -vs- | * | AND ORDER RE: MOTION |
| | * | TO SUPPRESS |
| PEDRO IBARRA, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Defendant, Pedro Ibarra, was indicted for knowingly and intentionally possessing with the intent to distribute 5 grams or more of methamphetamine. Doc. 15. Defendant moved to suppress evidence that he maintains was the result of an unconstitutional search and seizure. Doc. 29. An evidentiary hearing was held on the motion to suppress before United States Magistrate Judge John E. Simko on February 22, 2007. Judge Simko entered a Report and Recommendation, recommending that Defendant's motion to suppress be denied. Doc. 35. Defendant filed objections to the Report and Recommendation. Doc. 44. After reviewing the transcript of the suppression hearing, the Report and Recommendation, the objections thereto and the parties' submissions, this Court is accepting in part and rejecting in part the Report and Recommendation and granting the motion to suppress.

## FACTUAL BACKGROUND

On December 2, 2006, at 1:05 p.m. the Sioux Falls Police responded to a call regarding possible narcotics activity taking place within a small trailer home at 4506 West 12th Street in Sioux Falls. The record does not reflect who made the call. Officers Ellman, Hanisch and Cook responded to the call. After Officer Ellman knocked on the door of the trailer, Defendant answered the door. Officer Ellman asked Defendant if he and Officer Hanisch could enter the trailer, and Officer Ellman motioned inside the trailer home. Officer Ellman testified, "I asked him three times exactly if I could come inside to talk to him and he said yes." Defendant, who is Hispanic and who has utilized a Spanish interpreter in the court proceedings in this case, has contended that the language barrier

prevented him from giving voluntary consent to enter and search the trailer. Officer Ellman testified that Defendant did not seem to have a problem understanding him but that he asked Defendant three times "[f]or clarification, to give him a chance to say no if that was his prerogative."Defendant then gestured for Officers Ellman and Hanisch to enter the trailer home. After Officers Ellman and Hanisch entered the trailer home, Officer Cook came from behind the trailer and entered the front door of the trailer.

After entering the trailer the officers saw two Hispanic men drinking at a table and a woman on a couch. After Officer Ellman heard what he believed to be other persons in the trailer, he asked Defendant if other individuals were in the trailer, but did not request permission to go to and speak with the other individuals. Defendant gestured to the back of the trailer, and Officer Ellman walked to the rear of the trailer and saw three women sitting on a mattress in the rear room of the trailer. The rear room was bare, Officer Ellman could see the women's hands and he was not concerned about the women brandishing weapons. Officer Ellman attempted to identify the three women. One of the women had an active warrant and was taken into custody.

Officer Ellman questioned the women in the rear room of the trailer regarding any narcotics activity that may have taken place in the trailer. Officer Ellman estimates staying in the back room and talking to the women for between five and ten minutes. One of the women covered her hand so the other woman could not see her and pointed toward another bedroom behind Officer Ellman and indicated in a low voice that she wanted to speak to Officer Ellman in the bedroom behind him. Officer Ellman followed the woman into the other bedroom. Once inside the other bedroom the woman motioned to a dresser and closet. Officer Ellman testified he believed the woman was trying to tell him someone was hiding in the closet. Officer Ellman then told the woman to leave the bedroom and Officer Ellman ordered the person to get out of the closet, but after looking inside the closet, Officer Ellman realized noone was in the closet. Officer Ellman returned to the rear room and the woman again began motioning to the other bedroom. The woman went back to the bedroom, motioned again to the closet/dresser area and spoke too softly for Officer Ellman to understand. After the woman spoke in Officer Ellman's ear, telling him "over there on the dresser," Officer Ellman looked on the dresser and observed a plate with a white powdery substance. When Officer Ellmen asked the woman what it was, she advised it was drugs. Officer Ellman then advised the

other officers of the white substance and requested a drug kit.

While Officer Ellman was in the rear of the trailer, Officer Hanisch was identifying the individuals in the front of the trailer. At the time the officers were in the trailer Officer Hanisch suspected but did not yet confirm that the individuals, including Defendant, were illegal aliens. Defendant gave Officer Hanisch a state ID. Officer Hanisch told Defendant and the other individuals that they had been called to the trailer because there were possible minors in the house and that narcotics might be involved. When asked who called, Officer Hanisch told Defendant and the other individuals the stereo was so loud the whole trailer court could have called and made a complaint. Defendant has alleged that the officers misrepresented that they were at the trailer due to a noise complaint.

After the test kit tested positive for methamphetamine, Officer Hanisch told Defendant that drugs were found in the back bedroom. A fourth officer who had arrived asked permission from Defendant to search for narcotics, and then Officer Hanisch also asked Defendant for permission to search the trailer for more narcotics. Officer Hanisch testified that he asked permission, not because of a concern that Defendant did not understand the other officer, but because he was surprised that Defendant had said yes and "[j]ust to make sure we were dong the right thing, that we had permission to do it, I asked again to make sure he understood what we were asking and that we were going to be trying to look for more narcotics." Officer Hanisch's report states that the request to search was repeated several times. After conducting a search more drugs and drug related items were found in the trailer. Defendant then consented to speaking to the officers regarding the offense for which he is charged.

## DISCUSSION

The Magistrate's Report and Recommendation rejects Defendant's challenges to the voluntariness of his consent based on the language barrier and alleged misrepresentation about the nature of the investigation. The Magistrate's Report and Recommendation rejects the Government's position that the search was valid under the protective sweep doctrine, but concludes that the exclusionary rule does not apply because of the inevitable discovery doctrine. Although this Court agrees that the protective sweep doctrine does not validate the search, this Court concludes that the the inevitable discovery doctrine does not preclude application of the exclusionary rule under the

3

facts of this case.

**Protective Sweep Doctrine**

In *Maryland v. Buie*, 494 U.S. 325, 327(1990), the Supreme Court established a two-prong test for determining whether a protective sweep incident to an arrest was constitutionally permissible. First, the Supreme Court in *Buie* held "as an incident to the arrest" officers could, as a precautionary matter and without either probable cause or reasonable suspicion, look in spaces immediately adjoining the place of arrest "from which an attack could be immediately launched." 494 U.S. at 334. Second, the Supreme Court in *Buie* permitted a broader sweep "when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at 337. However, in either circumstance, a protective sweep "may extend only to a cursory inspection of those spaces where a person may be found," and may last "no longer than is necessary to dispel the reasonable suspicion of danger ...." *Id.* at 335-36.

In *United States v. Waldner*, 425 F.3d 514, 517 (8th Cir. 2005), the Eighth Circuit Court of Appeals addressed *Buie's* protective sweep doctrine in a non-arrest situation. The Eighth Circuit observed that other circuits had applied *Buie* to non-arrest situations but only under the second prong of *Buie*, which requires a showing of a reasonable suspicion of dangerous individuals in the house to be searched. 425 F.3d at 517 (citing *United States v. Gould*, 364 F.3d 578, 584 (5th Cir.2004) (en banc); *United States v. Taylor*, 248 F.3d 506, 513-14 (6th Cir.2001); *United States v. Garcia*, 997 F.2d 1273, 1282 (9th Cir.1993); *United States v. Patrick*, 959 F.2d 991, 996-97 (D.C.Cir.1992); *United States v. Daoust*, 916 F.2d 757, 758-59 (1st Cir.1990). The Eighth Circuit then declined the government's invitation to extend *Buie's* protective sweep doctrine further than the referenced circuits had extended it. 425 F.3d at 517.

The Magistrate's Report and Recommendation correctly concluded that this Court is limited by the Eighth Circuit's interpretation of *Buie* in the *Waldner* case. The "sweep" in the case at hand lasted longer than what was necessary to dispel any reasonable suspicion of danger, and extended beyond a "cursory inspection" of any potentially dangerous space within the trailer home. Further, at the time Officer Ellman discovered the narcotics on the plate he could no longer have possessed "a reasonable belief based on specific and articulable facts that the area to be swept harbor[ed] an

4

individual posing a danger." *Buie,* 494 U.S. at 337. For these reasons the Magistrate's Report and Recommendation correctly rejects the Government's position that the search was valid under the protective sweep doctrine.

## The Inevitable Discovery Exception to the Exclusionary Rule

This Court agrees with the Report and Recommendation's finding that Defendant did not consent to the officers traversing through his entire home after he allowed them in his front door. This Court disagrees, however, with the Report and Recommendation's conclusion that the evidence of illegal drugs and Defendant's statement's regarding the same would have been inevitably discovered. The Report and Recommendation reasons that the discovery of the incriminating evidence was inevitable because the officers would have sought and determined the identity of the guests, regardless of whether the guests were spoken to in the back room or the front of the trailer home, and the woman guest would have inevitably revealed the presence of illegal drugs in the trailer home.

In *Nix v. Williams,* 467 U.S. 431 (U.S.1984), the United States Supreme Court adopted the inevitable or ultimate discovery exception to the exclusionary rule. This exception provides that in cases where the challenged evidence is in some sense the product of illegal governmental activity, if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means, the deterrence rationale of the exclusionary rule has so little basis that the challenged evidence should be received. 467 U.S. at 444.

The Eighth Circuit Court of Appeals has directed that in order to succeed under the inevitable discovery exception to the exclusionary rule, the government must prove two factors by a preponderance of the evidence.[1] Those two factors are: (1) that there was a reasonable probability

---

[1] The concurring opinion in the recent case of *United States v. Thomas,* 480 F.3d 878, 883 (8th Cir. 2007), states that the Eighth Circuit's "present articulation of the inevitable discovery doctrine is inconsistent with Supreme Court precedent and warrants consideration at an appropriate time by the en banc court." The concurring opinion maintains that the present approach is overinclusive in the first prong of the analysis and underinclusive in the second prong of the analysis.

that the challenged evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that at the time of the constitutional violation the government was actively pursuing a substantial, alternative line of investigation. *United States v. Conner*, 127 F.3d 663, 667 (8th Cir. 1997)(citing *United States v. Wilson*, 36 F.3d 1298, 1304 (5th Cir. 1994)).

The woman that led Officer Ellman to the drugs on the plate on the dresser was obviously reluctant to speak out about the drugs even after having been questioned about the presence of narcotics by Officer Ellman and while situated in the back room away from the larger group of individuals. Also, Officer Ellman was unable to recognize the presence of the illegal drug on the plate until some time after he had entered the bedroom a second time. Although "reasonable probability" means something less than "more likely than not," *see Kyles v. Whitley*, 514 U.S. 419, 434 (1995), given the woman's reticence to speak up in the back room, this Court cannot conclude that a reasonable probability exists that the individuals would have been called to the front of the trailer home for the purpose of disclosing identity, and that in this posture this woman or any other of the individuals would have inevitably revealed the presence of illegal drugs in the trailer home.

In addition, this Court does not find that in the facts of this case there existed "an ongoing line of investigation that is distinct from the impermissible or unlawful technique," so as to satisfy the second factor of the inevitable discovery exception to the exclusionary rule. *See United States v. Villalba-Alvarado*, 345 F.3d 1007, 1020 (8th Cir. 2003). Although Officer Ellman when identifying individuals in the back room discovered that one of the women had an outstanding arrest warrant, this incident does not constitute a substantial, alternative line of investigation that the officer was pursuing at the time his conduct exceeded the scope of a valid protective sweep. Having satisfied neither of the two factors, the facts of this case do not support the inevitable discovery exception to the exclusionary rule.

Evidence seized during unlawful search cannot constitute proof against the victim of the search, and this exclusionary prohibition extends to both direct and indirect products of the unlawful search. *Wong Sun v. United States*, 371 U.S. 471 (1963).Since this Court has determined that the officer's conduct exceeded the scope of a Constitutionally valid protective sweep at the time the drugs on the plate were found in the bedroom, and since this Court has found that the inevitable discovery exception to the exclusionary rule does not apply, this Court concludes that evidence of

the drugs on the plate shall be suppressed, and the evidence of other drugs and drug related items that were found in the trailer as well as Defendant's statements that were made after being confronted with the evidence of the drugs on the plate, shall be suppressed as the fruit of the unlawful search. Accordingly,

IT IS ORDERED:

1. That Defendant's objections to the Report and Recommendation (Doc. 44) are granted;

2. That the Magistrate's Report and Recommendation is accepted in part and rejected in part as set forth in this Memorandum Opinion; and

3. That Defendant's Motion to Suppress (Doc. 29) is granted.

Dated this 3rd day of May, 2007.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: _____
(SEAL)        DEPUTY